[No. G029055. Fourth Dist., Div. Three. Nov. 19, 2002.]

MAGNA ENTERPRISES, INC., Plaintiff and Appellant, v.
FIDELITY NATIONAL TITLE INSURANCE COMPANY, Defendant and
Respondent.

COUNSEL

Law Offices of Jeffrey E. Thomas and Jeffrey E. Thomas for Plaintiff and Appellant.

Lori S. Carver and Brian P. Stewart for Defendant and Respondent.

OPINION

O'LEARY, J.—Magna Enterprises, Inc. (Magna) appeals the judgment against it in its action against Fidelity National Title Insurance Company (Fidelity) for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief, contending the trial court erroneously found Magna had not suffered a lack of right of access to and from its land under its title insurance policy with Fidelity. We affirm.

Magna owned four adjacent parcels of commercial property in the City of Montebello (the City). An auto repair center existed on one parcel, while a shopping center sat on the other three parcels. Although the parcels abutted one another, one could not practicably access the repair center from a public street by traveling across the shopping center parcels because those parcels were two and one-half feet higher than the repair center parcel and a fence and one of the shopping center buildings abutted the repair center parcel.

Magna believed the City would not allow access to the repair center from the shopping center. As part of a redevelopment plan for the shopping center, Magna understood the City would require a five-foot-high block wall between the repair center and the shopping center. Magna had not sought city approval for vehicular access to the repair center from the shopping center, however.

When Magna bought the properties, it obtained a title insurance policy from Fidelity. The relevant provision of the policy afforded coverage for "[l]ack of a right of access to and from [Magna's] land."

Street access to the repair center was had through a liquor store property owned by one Mrs. Lim. That access was gained through an easement for ingress, egress, and drainage granted by Lim's predecessor in interest in favor of Magna's predecessor in interest. After that easement was granted,

however, Magna's predecessor granted Lim's predecessor a parking easement which apparently covered part of the ingress/egress easement.

Lim eventually sued Magna for trespass and nuisance, claiming the ingress/egress easement unlawfully interfered with the use of the parking easement. Magna cross-complained for reformation of its easement to extend it to the street.

Magna submitted a claim and tender of defense to Fidelity but was rebuffed. Fidelity claimed Magna had a right of access through the shopping center to the repair center.

Magna prevailed on its cross-complaint, and its easement was reformed to afford it access to and from the repair center. Magna sued Fidelity for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. The trial court entered judgment for Fidelity, finding no coverage under the policy because Magna had a right of access to the repair center from the shopping center.

Magna contends the trial court improperly interpreted the title insurance policy language "[l]ack of a right of access to and from [Magna's] land." It claims the court improperly implied the word "legal" before "access." We conclude the trial correctly construed the meaning of the policy without resort to implication. Indeed, as we shall see, Magna's construction implicitly deletes the words "a right of" from the policy's language.

"[T]he words in an insurance policy are to be interpreted according to the plain meaning which a layman, not an attorney or insurance expert, would ordinarily attach to the words. [Citation.] 'Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.' [Citation.] Only if policy provisions are susceptible to alternative readings are doubts in interpretation resolved against the insurer. [Citation.] Although insurance contract provisions relating to exclusions or exceptions from the performance of the basic, underlying obligations are construed strictly against the insurer and liberally in favor of the insured, courts may not put a strained or unnatural construction on the terms of a policy to manufacture an uncertainty or ambiguity where none reasonably exists. [Citations.]" (*Manneck v. Lawyers Title Ins. Corp.* (1994) 28 Cal.App.4th 1294, 1301-1302 [33 Cal.Rptr.2d 771].)

By its terms, Magna's policy insures against a lack of *right* to access, not a lack of physical or practical access. It is axiomatic that rights

are legal in nature, at least when used in insurance contracts. It is not necessary to add the word "legal" to make it so. It would not only be a strained and unnatural construction to read the language of the policy words to construe the policy to cover lack of physical or practical access, it would completely alter what is covered.

Although we find no California holding on point to support this conclusion, other authority does so. A well-respected treatise opines: "Owners and lenders are insured against lack of a *right* of access to the land. A right of access can be different from practical or physical access. [¶] . . . If the insured property is landlocked, it has no right of access. If the insured property is contiguous to a public road but so steeply sloped as to make physical access impractical or extremely expensive, it still has a right of access." (Title Insurance Practice (Cont.Ed.Bar 2d ed. 1999) § 6.27, p. 140.)

This analysis is consistent with general California title insurance law. ▮ "Title insurance, as opposed to other types of insurance, does not insure against future events. It is not forward looking. It insures against losses resulting from differences between the actual title and the record title as of the date title is insured. The policy does not guarantee the state of the title. Instead, it agrees to indemnify the insured for losses incurred as a result of defects in or encumbrances on the title. [Citation.]" (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 41 [77 Cal.Rptr.2d 709, 960 P.2d 513].) ▮ It would be contrary to the nature of title insurance, to read "lack of a right of access" to insure against the loss of the only present physical and practical access if a right to access exists.

*Havstad v. Fidelity National Title Ins. Co.* (1997) 58 Cal.App.4th 654 [68 Cal.Rptr.2d 487], a case with facts analogous to Magna's, is consistent with this approach, albeit in dictum. In *Havstad,* the title insurer refused to defend the insureds against a trespass claim by the owner of property that the insureds used to access their land. After the insureds prevailed on their claim of easement, they sued the insurance company for breach of contract and the implied covenant of good faith and fair dealing. The trial court granted summary judgment in favor of the insurance company, finding no coverage. (*Id.* at pp. 657-658.)

The Court of Appeal affirmed, holding that the easement over which the insureds gained access to their property was not part of the "land" insured by the policy. (*Havstad v. Fidelity National Title Ins. Co., supra,* 58 Cal.App.4th

at pp. 659-661.) Magna does not dispute this holding or claim that its policy covered its easement for ingress and egress across the Lim property.

In *Havstad*, the insured argued for the first time on appeal they had coverage due to a potential lack of a right of access to their land. The Court of Appeal found it was not required to address the tardy claim but observed the claim lacked merit because the insureds had access to their property from a contiguous property they owned which abutted a public street. (*Havstad v. Fidelity National Title Ins. Co., supra,* 58 Cal.App.4th at p. 661.)

Out-of-state cases support this conclusion. The majority of them hold coverage for a lack of right of access to the insured property is not triggered where access is merely impractical or difficult as long as the right to access exists. (See *Gates v. Chicago Title Ins. Co.* (Mo.Ct.App. 1991) 813 S.W.2d 10, 11-12 [insured had right of alternate access over difficult, treacherous "goat path"]; *Krause v. Title & Trust Co. of Florida* (Fla.Dist.Ct.App.1980) 390 So.2d 805, 806 [insured had right of access via road that was impassible without substantial clay and rock fill]; *Title & Trust Co. of Florida v. Barrows* (Fla.Dist.Ct.App.1979) 381 So.2d 1088, 1090 [insured had right of access via street that was flooded by tides in the spring and fall].)

Magna takes solace in *Marriott Financial Services, Inc. v. Capitol Funds, Inc.* (1975) 288 N.C. 122 [217 S.E.2d 551, 77 A.L.R.3d 1036]. The court there held a "right to access" could not be satisfied by pedestrian access only. (*Id.* at p. 144 [217 S.E.2d at p. 565].) It did not consider whether impractical or difficult vehicular access constituted a "right to access," and for that reason, it is inapposite.

Magna's ownership of the abutting shopping center property gave it a right to access the repair center property. The location of a building and fence and differences in elevation may have rendered physical access difficult or impractical, but that is not the test.

Magna notes it believed the City would not approve such access and the City wanted a five-foot-tall wall between the repair center and the shopping center as a condition of approval of the shopping center redevelopment. This was inadequate to show Magna lacked legal access to the repair center

property, especially since no evidence showed the City could or would prohibit such access if it were Magna's only possible access.[1]

The judgment is affirmed. Fidelity is entitled to its costs on appeal.

Sills, P. J., and Bedsworth, J., concurred.

---

[1]Thus, we need not consider whether an insured lacks a right to access where a governmental entity has lawfully prohibited or failed to grant the insured access to its property from other property it owns.